[Crim. No. 1072.   Second Appellate District, Division Two.—February 19, 1924.]

## In the Matter of the Application of THERESA MARIE LOUISE GILLE for a Writ of Habeas Corpus.

[1] PARENT AND CHILD—ILLEGITIMATE MINOR—RIGHT TO CUSTODY.— The mother of an illegitimate unmarried minor, unless her character or her surroundings are such as to unfit her therefor, is entitled to the custody of her child.

[2] ID.—FITNESS OF MOTHER—WEALTH OF FOSTER PARENTS—CUSTODY OF MINOR.—Where the mother's character, aside from the one lapse which resulted in the birth of a child out of wedlock, seems to be unimpeachable, and she is able to give that child a suitable home with fit and proper surroundings, the mere fact that the persons (a husband and wife) in whose custody and care the mother had placed said child possess more wealth than the mother, and are for that reason able to give the child better educational advantages, affords no reason why the mother should be deprived of the right to the custody of her child.

[3] ID.—RIGHT OF CUSTODY—JUDGMENTS—RES JUDICATA.—A final adjudication on a writ of *habeas corpus* brought to determine the right of a parent or guardian to the care and custody of a minor child conclusively determines all questions necessarily involved as between the same parties and upon the same facts.

[4] ID.—CHANGE OF CONDITIONS—LEGAL RIGHTS AFFECTED.—An adjudication in a *habeas corpus* proceeding involving the right to the custody of a minor is *res judicata* and binding upon the parties only so long as the facts are the same and the conditions affecting the child's welfare or the parents' rights exist as they were when the hearing was had and the former order was made.

[5] ID.—FORMER PROCEEDINGS NOT RES JUDICATA.—A judgment of the superior court dismissing a *habeas corpus* proceeding instituted by a mother to obtain the custody of her illegitimate minor daughter is not conclusive in a subsequent *habeas corpus* proceeding instituted for the same purpose by the mother, where, subsequent to said former judgment, the foster parents of said child sought to keep petitioner in ignorance of their present place of abode, that

1.   Who entitled to custody of illegitimate child, notes, 88 Am. St. Rep. 874; 17 Ann. Cas. 474; 65 L. R. A. 689.

3.   *Habeas corpus* decree as to custody of infant as *res judicata,* notes, 1 Ann. Cas. 260; 11 Ann. Cas. 129; Ann. Cas. 1912D, 361; Ann. Cas. 1916D, 511; 67 L. R. A. 783.

thus the mother might be denied the privilege of visiting and seeing her daughter, and they formed a settled purpose to teach the child to shun her mother's presence and to shrink from her in affright, and as a result of their acts and conduct the child had been caused to assume an unfilial attitude toward her mother.

PROCEEDING in Habeas Corpus to secure the custody of an illegitimate minor child. Writ granted.

The facts are stated in the opinion of the court.

Paul Blackwood for Petitioner.

Newby & Palmer for Respondents.

FINLAYSON, P. J.—This is a proceeding in *habeas corpus* to obtain the custody of a ten year old girl, the daughter of petitioner, who applied for the writ on behalf of the child. Certain unusual features set forth in the mother's petition, but which are not necessary to narrate, induce this court to exercise its original jurisdiction in this instance.

The child was born out of wedlock. Her mother, *née* Claudia Gille, is now married to Rudolph Hagberg, an artist, whose earnings are sufficient to support himself, his wife, and the child. In October of 1915 the mother placed the child in the care and custody of the respondents to the writ, William S. Jenkins and Edna A. Jenkins, husband and wife, who reside in the city of Los Angeles and who assumed the obligation to care for the child and to board it under an agreement whereby the mother agreed to pay respondents the monthly sum of thirteen dollars. The parties lived up to the terms of this agreement for a number of years following the arrangement. During this time petitioner, who was working in a laundry, frequently called at the home of Mr. and Mrs. Jenkins to see her little girl. Until about a year or a year and a half ago Mr. and Mrs. Jenkins permitted these visits without let or hindrance. At no time has petitioner evinced any intention to abandon her infant daughter or to part permanently with the right to her custody and control.

On July 10, 1922, petitioner made application to the superior court of Los Angeles County for a writ of *habeas corpus*, praying for the custody of her child. The writ was

issued, Mr. and Mrs. Jenkins made return thereto and the matter was heard, with the result that an order was made on the twenty-first day of July, 1922, dismissing the writ.

Respondents, who possess more of this world's goods than does the mother or her husband, are deeply attached to the little girl. They have taken care of her for more than eight years, and earnestly desire to continue so to do. The child is happy and contented, and desires to remain with her foster parents.

Petitioner seems to have atoned for the one slip which resulted in the birth of this child of illicit intercourse, and her life since then appears exemplary in every particular. She is happily married to her husband, and the couple are living in a comfortable and well-regulated home. The mother's desire to have her child with her meets with the husband's approval. Though respondents would have us believe otherwise, we feel confident that the mother's wish to regain the care and custody of her offspring is prompted by no motive other than a genuine parental affection and the desire to discharge a duty imposed upon her by the laws of God and man.

[1] The mother of an illegitimate unmarried minor, unless her character or her surroundings are such as to unfit her therefor, is entitled to the custody of her child. (Civ. Code, sec. 200.) [2] In the present instance the mother's character, aside from the one lapse which resulted in the birth of this child out of wedlock, seems to be unimpeachable. She is able to give her daughter a suitable home with fit and proper surroundings. The mere fact that respondents possess more wealth than she, and are for that reason able to give the child better educational advantages, affords no reason why the mother should be deprived of the right to the custody of her child—the bone of her bone and flesh of her flesh. "A parent who is of good character and a proper person to have the custody of the child and reasonably able to provide for it is entitled to the custody as against other persons, although such others are much attached to the child, and the child is attached to them, and prefers to remain with them, and they are in all respects suitable to have the custody of the child and able to support and care for it, and even though they are of larger fortune or able to provide for the child more comfortably than the parent, or to care for it better, or to give it a better education than the parent can

afford." (29 Cyc., p. 1590. See, also, *Matter of Schwartz*, 171 Cal. 633 [154 Pac. 304].)

It follows from what we have said that petitioner is entitled to have the custody of her child awarded to her in this proceeding unless, as claimed by respondents, the order made by the superior court in the *habeas corpus* proceeding which was before that court in 1922 is *res adjudicata* and conclusive upon petitioner's parental rights.

[3] A final adjudication on a writ of *habeas corpus* brought to determine the right of a parent or guardian to the care and custody of a minor child conclusively determines all questions necessarily involved, as between the same parties *and upon the same state of facts.* (*Ex parte Holt*, 34 Cal. App. 290 [167 Pac. 184]; *In re Frazier*, 50 Cal. App. 45 [194 Pac. 510].) From its very nature the adjudication in such a proceeding can operate only upon those existing facts and conditions which affect the well-being of the child and the rights of the parent or guardian. In all such proceedings the welfare of the child is the cardinal consideration, and it not infrequently is controlling. The parent has the superior right to the child, but that right must yield to the child's best interests. (*In re Jones*, 153 N. C. 312 [138 Am. St. Rep. 670, 69 N. E. 217]; note to *Clark* v. *White*, Ann. Cas. 1914A, p. 750.) The conditions which determine the welfare of a child are not necessarily permanent. They often change. For this reason it has been said that a judgment or decree awarding the custody of an infant child is in its nature temporary, and applies only to existing facts and conditions. (Note to *Miller* v. *Gordon*, Ann. Cas. 1916D, p. 511; *Willis* v. *Bell*, 86 Ark. 473 [111 S. W. 808].) [4] Hence it is that an adjudication in a *habeas corpus* proceeding involving the right to the custody of a minor is *res adjudicata* and binding upon the parties only so long as the facts are the same and the conditions affecting the child's welfare or the parents' rights exist as they were when the hearing was had and the former order was made. So the authorities hold with practical unanimity. (See *Watts* v. *Smylie*, 116 Miss. 12 [76 South. 684]; *Martin* v. *Collingwood*, 200 Mich. 549 [167 N. W. 13]; *People* v. *Mercein*, 3 Hill (N. Y.), 399 [38 Am. Dec. 644]; *Cormack* v. *Marshall*, 211 Ill. 519 [1 Ann. Cas. 256, 67 L. R. A. 687,

71 N. E. 1077] ; note to *Miller* v. *Gordon,* Ann. Cas. 1916D,
p. 511.)

[5] There is evidence before us to indicate that subsequently to the order of the superior court in 1922 dismissing
the *habeas corpus* writ then before that court Mr. and Mrs.
Jenkins sought to keep petitioner in ignorance of their present place of abode, that thus the mother might be denied
the privilege of visiting and seeing her infant daughter.
There also is evidence that respondents, since the adjudication in the former proceeding, have formed a settled purpose
to teach the child to shun her mother's presence and to
shrink from her in affright. Such conduct on the part of
respondents ignores the mother's natural rights. Though
denied the right to the custody of her child by the former
order, the mother still had rights which the respondents
to this writ were bound to respect while the child was in
their custody and subject to their control and guidance.
Respondents' conduct wronged the child as well as its mother.
The child's present unfilial attitude is not natural. We can
account for it only upon the theory that it was engendered
by words and acts on the part of respondents designed to
poison the child's mind and to teach her to fear, if not to
hate and despise, her own mother, who, though she may
have sinned when a young woman, had gone down into the
valley of the shadow of death that her child might be born.

The change which has occurred in the child's attitude toward her mother since the adjudication in the former *habeas
corpus* proceeding—a change for which respondents unquestionably are responsible—and respondents' evident purpose to conceal the child·and to keep the mother in ignorance
of its whereabouts, so far affect the mother's rights, to say
nothing of the child's well-being, that respondents no longer
should be permitted to occupy a status which enables them
to mold the little girl's thoughts and feelings and to shape
her future. For this reason we think that new facts have
arisen and that a change of circumstances has occurred
materially altering the state of the case and the relative
claims of the parties, and that, therefore, the judgment of
the superior court in the former *habeas corpus* proceeding
is not conclusive in the present proceeding. (See *Martin* v.
*Collingwood, supra.*)

It is ordered that the minor, Theresa Marie Louise Gille, be released from the care, custody, and control of William S. Jenkins and Edna A. Jenkins, and that Claudia Hagberg, the petitioner herein, have the care, custody, and control of said minor.

Works, J., and Craig, J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 15, 1924.

All the Justices concurred.