[Civ. No. 3110. Third Appellate District.—October 21, 1297.]

In the Matter of the Application of MATTIE M. STEIN to have Lena, Verna, Emma, Alfred, and Walter Epp Adjudged Wards of the Juvenile Court.

Jacobs & Jacobs for Applicant.

Edward Van Vranken, District Attorney, for Respondent.

PLUMMER, J.—On the seventeenth day of November, 1925, a petition was filed by Mattie M. Stein, one of the juvenile court officers of the county of San Joaquin, in the superior court of the county of San Joaquin, praying that the above-named minors be adjudged wards of the juvenile court of said county. The petition shows that the oldest of said minors was of the age of twelve years and the youngest of said minors of the age of five years. It is further set forth in the petition that the whereabouts of the father of said minors was unknown. That said minors had no parents exercising proper parental care and control, and that said minors were in need of the same. That said minors have been kept and maintained in a bunk-house unfit for such purposes. That the minors were residents within the county of San Joaquin. And that said minors should be dealt with according to the Juvenile Law of the state of California. A citation was thereupon issued, and in due time an answer to said petition was filed by the mother of said minors. The matter came on for hearing on the thirtieth day of November, 1925, and after the taking of the testimony, the further hearing of said matter was continued until the seventh day of December, 1925, upon which day the taking of testimony in said matter was concluded. At the conclusion of the taking of the testimony, the court found therefrom that Lena Epp was a minor of the age of twelve years; Verna Epp, a minor of the age of ten years; Emma Epp, a minor of the age of eight years; Alfred Epp, a minor of the age of five years, and Walter Epp, a minor of the age of four years. That it further appeared to the satisfaction of the court that Alfred Epp was the father of said minors and Frances Epp the mother of said minors. That the whereabouts of the father of said minors was unknown, and that the mother of said minors was a resident of the county of San Joaquin. That it further appeared to the satisfaction of the court that said minors have no parent actually exercising proper parental

control and care over them, and that such minors were in need of such control, and that the best interests of said minors would be subserved by their being adjudged wards of the juvenile court. Thereupon, the court ordered and adjudged said minors to be the wards of the juvenile court and placed them under the general supervision and control of the probation officer of the county of San Joaquin. It was further ordered that Frances Epp, the mother of said minors, pay to the probation officer of the county of San Joaquin, until the further order of the court, the sum of fifteen dollars per month for the maintenance of each of said wards.

Upon this appeal it is contended that the evidence introduced in this cause was insufficient to justify an order or decree adjudging said minors wards of the juvenile court of said county. Neither the sufficiency of the petition nor of the order of the court appears to be questioned upon this proceeding. Our attention is directed simply to matters of fact. While several cases have been cited to the effect that the custody of minors should not be taken from parents upon slight or trivial causes, and that it is a serious thing to interfere with a parent's control, care, custody, and education of his child, there is nothing in any of the cases cited which would lead to the conclusion that the court in this case proceeded without jurisdiction, or that its judgment went beyond the provisions of the Juvenile Court Law [Stats. 1915, p. 1225]. When the record in this cause is sifted and analyzed we are really presented with an argument that the testimony in this cause should have led the court to an opposite conclusion from that at which it arrived. The appellant has set out in an appendix to her brief all the testimony favorable to the appellant, and at the same time has omitted from her brief all the testimony which would indicate that the judgment of the juvenile court was well founded.

By turning to the testimony set forth in the reporter's transcript we find that the minors in question were under the observation of the probation officers of the county of San Joaquin for some period of time prior to the actual filing of the petition herein on the twenty-fifth day of October, 1925. That the mother of the minors lived in the town of Lodi for a period of time; that she lived for a short

period of time just north of the north line of the county of San Joaquin, and then again moved to the place from which they were taken within the county of San Joaquin. That the minors were left, a good portion of the time, at a place where there was no one present but a man who is supposed to have been a milker. At this place the premises were found to be very filthy and in a dirty condition. That the beds were all in one room; that the children all slept in one room; and that a part of the time the man supposed to be a milker slept in the same room; that the appellant herein was asked to better the conditions, and that the appellant wanted the probation officers to take care of the children, but was informed that what was wanted was for the mother to take care of them. That the persons of the children at this time in question were not unclean. After leaving the first residence mentioned Mrs. Epp moved to Lodi with her children and lived there a short period of time. The children were not kept in school regularly, and of this the mother was notified. Thereafter the mother moved with her children to a bunk-house on what was known as the Noble ranch. This place was found to be in a filthy condition. It appears that it was at this place where the children slept in one room, and the room in which a man supposed to be a milker also slept—one of the little girls stating that she slept in the same bed with the milker. That when the children were taken from this home to the county hospital they were in a filthy and ragged condition and were affected with what is called "scabbies." It thus appears that the minors were kept in three different places, all of which were other than fit places for the maintenance of children.

The testimony also shows that the father of the minors was addicted to the excessive use of intoxicating liquor, had disappeared, and his whereabouts was unknown.

The testimony further shows that for a number of days all of the minors were lodged in a hay-barn at night.

There is also testimony in the record indicating that the home influence and example were inimical to the welfare of the children. As it appears in the reporter's transcript, this testimony is not very strong, but its weight was for the juvenile court, and not for us.

As against this testimony which we find in the record there is considerable testimony given by apparently responsible people, which testimony is set out in appellant's brief, indicating that the interposition of the juvenile court in behalf of said minors was unnecessary. The juvenile court had before it all of the witnesses. It was the duty of the juvenile court to give to the testimony of each witness the credibility and weight to which it might be considered entitled. The opportunity of the witness to observe and learn the conditions and all the circumstances under which the minors were being maintained were the really important facts or matters to be considered by the juvenile court, as well as the credibility of the witnesses, in coming to a conclusion. Where the opportunities of a witness for observing are limited, the fact that the witness is otherwise credible does not lend special weight to his testimony. In other words, the testimony of a number of highly respectable witnesses concerning matters of which they have but little information cannot be said by an appellate court to overthrow and destroy the testimony of only one witness who has investigated the circumstances and testifies therefrom. Judged by mere numbers of witnesses testifying, the order of the juvenile court should be reversed. But where there is sufficient evidence set forth in the transcript which, if believed by the juvenile court, is sufficient to sustain the judgment, this court, on appeal, must accept the findings and judgment of the lower court as conclusive.

Under the provisions of the Juvenile Court Law application for a modification or setting aside of the orders of the juvenile court may be made at any time before the minors attain their majority, and under the provisions of the Juvenile Court Law the court below, upon application, should the conditions so warrant, might restore any and all of the minors herein referred to, to the custody of the mother, or make such other or further order concerning their custody or the amount of money which should be contributed by the mother for their maintenance as may seem just and proper. This method of procedure being open to the appellant in this cause, if error has been made by the lower court in its estimate of the testimony upon which it acted, it is an error which is within the province of the juvenile court, upon proper application, to correct at any time.

It may be here stated that the record in this cause shows that the mother was, at the time of the hearing hereof, engaged in conducting a dairy, which kept her away from the home practically all of the time every day, and doubtless tended in considerable measure to prevent her giving the minors in question the care and attention to which they were entitled, and it may be that these conditions are entirely changed at this time. This, again, is a matter for presentation to the juvenile court.

No legal reason appearing why this court should interfere therewith, the judgment of the juvenile court is affirmed.

Weyand, J., *pro tem.*, and Finch, P. J., concurred.