[Crim. No. 2077.   First Appellate District, Division One.—August 10, 1939.]

In the Matter of the Application of DOROTHY JONES and BERNARD JONES, Minors, for a Writ of Habeas Corpus.

Joseph T. Curley and Marvin C. Hix for Petitioner.

Edward M. Leonard for Respondent.

KNIGHT, J.—This proceeding in *habeas corpus* was instituted by the petitioner John Savage to secure the release from the custody of the juvenile court authorities of the city and county of San Francisco of two children, namely, Dorothy and Bernard Jones, aged fourteen and ten years respectively. They are full orphans, and were adjudged wards of said court by the judgment thereof pursuant to proceedings initiated by the filing of a verified petition by the said John Savage, their guardian, wherein he alleged that the children were destitute and without means of support. Two hearings were had before the juvenile court; petitioner and his attorney were personally present at both, and at the final hearing petitioner requested permission to withdraw the petition. His request was denied, and at the conclusion of the hearing the court found that the status of the children fell within the provisions of subdivision c of section 700 of the Welfare and Institutions Code, and accordingly adjudged them to be wards of the court and committed them to the custody of the probation officer. Shortly afterwards they were placed temporarily in private homes, it being the intention of the court ulti-

mately, as expressed at the final hearing, to award permanent custody to relatives in England. Approximately two weeks after the entry of said judgment petitioner instituted the present proceeding in *habeas corpus* for their release.

It appears from the record produced in support of the return to the writ that the father of the children died in 1935, and the mother in May, 1937. They were residents of Contra Costa County; and following the death of her husband Mrs. Jones received state and county aid. The father was survived by a sister, Mrs. Lewis Oliver, a resident of Los Angeles, and several brothers and sisters in England; and Mrs. Jones was survived by relatives residing in this state, among them being an uncle, Peter Benson. The petitioner, John Savage, and his wife are residents of San Francisco, and were close friends of many years' standing of the parents of the children. At the time Mrs. Jones died, Mrs. Oliver was visiting her relatives in England; and the Contra Costa County authorities consented that petitioner and his wife take the children to live with them at their home in San Francisco. Mrs. Jones left insurance money and a small savings account, amounting in all to $1400; and Peter Benson applied for and was granted letters of guardianship of the children. In November, 1937, Mrs. Oliver returned from England and applied to the court in Contra Costa County to be appointed guardian in the place of Benson, with the view of taking the children to England to live with their father's relatives. The following month, December, 1937, Benson was stricken with a fatal illness and died soon afterwards; thereupon petitioner filed an application to be appointed guardian in opposition to the pending petition of Mrs. Oliver. His petition was granted, and later at his request the guardianship proceeding was transferred to San Francisco. Approximately $1174 of the guardianship funds were expended, $600 or thereabouts having been used to pay the funeral expenses of Mrs. Jones, $180 to reimburse petitioner and his wife for the money they had expended in behalf of the children during the year and a half or more they had cared for them, and the remainder for attorney's fees and court costs; so that only $226 remained in the hands of the guardian. Thereupon petitioner made an application to the department of social welfare agency in San Francisco for the $20 a month allowance for each child provided by law for the care of full orphans. He

was referred to Miss Leete (assistant probation officer) who, after making an investigation of the case, caused to be prepared a petition to the juvenile court, which petitioner verified, wherein he asked that the children be made wards of the court. Said verified petition was filed on January 24, 1939; and thereafter, as stated, two court hearings were had, which resulted in the rendition of the judgment petitioner now claims is void.

The writ of *habeas corpus* was issued upon the strength of certain allegations in the petition to the effect that no evidence whatever was taken at any time ''in behalf of any person''; that petitioner sought to introduce testimony at the final hearing of the matter but was not permitted to do so; that consequently the judgment is without evidentiary support. But the record produced at the hearing in support of the return to the writ clearly negatives such allegations and shows a substantial compliance with all necessary jurisdictional requirements. It appears therefrom that when petitioner made application to have the children adjudged wards of the court the probation officer, in conformity with the provisions of sections 638 and 639 of the Welfare and Institutions Code, caused a full and complete investigation to be made of the case, including an inquiry into the antecedents, character, family history and environment of said children, and made a written report thereof to the judge of the juvenile court. This written report was presented to the court in accordance with section 640 of said code at the first hearing of the matter, held on January 25, 1939, and was at all times open to the inspection of petitioner and his attorney. Present at said hearing were Miss Leete, the children, petitioner and his wife and their attorney, and Mrs. Oliver. In presenting the matter to the court Miss Leete supplemented the facts set forth in the report with a statement covering all of the circumstances of the case; whereupon, to the end that appropriate orders might be made concerning the custody and future welfare of the children, the court interrogated all interested parties, especially as to the family history, the chief question at issue being whether it would be to the best interests of the children to place them with their relatives in England as requested by Mrs. Oliver, or to allow them to remain with petitioner and his wife. Petitioner and his attorney, Mrs. Oliver and Miss Leete all took part in laying

the facts before the court, and finally, in order to ascertain definitely whether the relatives in England would give the children a home with them, and if so whether they were financially able to care for them, further hearing of the matter was continued for six weeks. On March 29, 1939, the matter came on for the second and final hearing before the court, among those present besides the juvenile court officers and the children being petitioner and his attorney. At that time Miss Leete presented a supplemental written report to the court and amplified it with an oral statement; and the important facts developed at said hearing were these: that petitioner had informed the probation officer it would not be possible for him to take care of the children without state and county aid; that satisfactory assurance had been given to the juvenile court authorities by Richard Jones, one of the uncles living in London, that he would be pleased to give the children a permanent home with his family, and that with the assistance of other members of the Jones family (one of his brothers being a major in the British army) ample provision would be made for their support and education; furthermore, that Mrs. Oliver intended to return to England soon, and would take the children with her; and that whatever additional sum of money was necessary over the amount remaining in the guardianship funds to cover the transportation expenses would be supplied by the juvenile court out of the "Maintenance of Minor" funds. Thereupon, and after the court had expressed the conviction that the children should be reared by their kinsfolk, petitioner asked permission to withdraw his petition; but the judge replied that inasmuch as the relatives had come forward and offered the children a permanent home, he felt that petitioner's request to withdraw the petition should be denied. The court then granted the motion of the probation officer that the children be declared wards of the court and indicated that whenever definite arrangements were perfected to transport them to their relatives in England, an order would be made to that effect.

In thus disposing of the proceeding the juvenile court conformed to all procedural requirements of the juvenile court law; and admittedly the judgment itself is in legal form. The recitals therein show that the necessary jurisdictional steps were taken and it contains all the essential findings of

fact and conclusions of law demanded by the statute. Such being the case, it is beyond the power of this court on *habeas corpus* to go behind the judgment to review either the evidence or any errors or irregularities which are alleged to have occurred before the juvenile court. (14 Cal. Jur. 148.) Adequate remedy is made therefor by way of appeal from the judgment. (Sec. 580, Welfare and Institutions Code.)

It is true the hearing was not conducted with all the strict formality of a criminal proceeding; but it was not necessary to do so because as frequently pointed out by the courts, proceedings of the juvenile court in dealing with cases of dependent children are not of a criminal nature. (*In re Edwards,* 99 Cal. App. 541 [278 Pac. 910, 290 Pac. 591], citing earlier cases.) Such court operates under special powers, in conformity with procedure prescribed therefor by the juvenile court law, which authorize the consideration by the juvenile court, in cases of this kind, of the written reports and recommendations of the probation officer, which under said law are open to inspection of the interested parties. (Secs. 638, 639 and 640, Welfare and Institutions Code.) In other words, from its very nature and because of necessary qualifications for doing the work for which it is intended, the juvenile court was not designed as a trial court in the ordinary sense; and its method of operation is very different from the one governing in the trial of criminal cases, mainly because technicalities and formalities are largely eliminated. (*People* v. *Superior Court,* 104 Cal. App. 276 [285 Pac. 871].)

Petitioner cites *In re Hill,* 78 Cal. App. 23 [247 Pac. 591], but obviously there is no analogy between that case and the present one. In the first place, unlike the case before us, the proceeding therein was instituted against the parents to deprive them of the custody of their child, based on allegations to the effect that the mother was cruel to the child; secondly, the cause was brought before the appellate court by the parents on an appeal from the judgment, which permitted a review of the evidence on the merits; third, the record showed that the juvenile court made no findings of fact whatever, which are essential under the statute; fourth, the attorney representing the parents was excluded from the hearing by order of the court; and lastly it appears from the decision therein that the judgment depriving the parents of the cus-

tody of their child was based on apparently nothing more than secret information imparted privately to the judge by undisclosed persons; and that neither the parents of the child nor their attorney was afforded any opportunity to ascertain the identity of those persons or what specific charges they had made; nor were they allowed to question any of those persons for any purpose. ■ Whereas here the record reveals no ground upon which it may be held that petitioner was deprived of any legal right granted by the juvenile law; and since it affirmatively appears that the court acquired jurisdiction of the proceeding and of the parties in conformity with the requirements of the statute, it was entirely within the discretion of the court to deny petitioner's request for permission to withdraw his petition.

■ The application for the writ also contains certain allegations to the effect that when petitioner first consulted Miss Leete he was unaware of the fact that she was an assistant probation officer; that she did not explain to him the nature or the purpose of the petition he signed and verified, and that he did not learn of the legal effect thereof until some three months later when he consulted his attorney. It is quite evident, however, that the allegations mentioned involve matters of fact which are not the proper subject of inquiry on *habeas corpus*. Quite to the contrary, it must be assumed that ample evidence was presented to justify the findings and the judgment. (14 Cal. Jur., p. 148.)

The writ is discharged, the proceeding is dismissed, and the children are remanded to the custody of the juvenile court.

Ward, J., and Peters, P. J., concurred.