[Civ. No. 22437.   Second Dist., Div. One.   Aug. 7, 1957.]

In re BRIAN LEE SCHUBERT, a Minor.

[Civ. No. 22438.   Second Dist., Div. One.   Aug. 7, 1957.]

In re JAMES LEE STOCKWELL, a Minor.

Brumer & Hopson and John R. Hopson for Appellants.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

DRAPEAU, J. pro tem.*—The appeals of these two boys ordered wards of the juvenile court, were argued, briefed, and submitted together. Testimony in one case was by stipulation considered in the other.

The factual background of the boys is so different, however, that a separate opinion has been written for each one.

### The Appeal of Brian Lee Schubert

This boy is 16 years old. His father is out of town Monday through Friday; home on weekends. His mother runs a beauty shop. His maternal grandmother lives in the home, and attempts to look out for the boy.

While economic conditions may sometimes require a father and mother to both work, this situation often leads to serious trouble for boys or girls, as happened in this case.

In 1956 Brian and some companions burglarized a restaurant in Pomona, and took five cases of beer. Before that, he, with others, rifled the contents of glove compartments in automobiles.

Because of this conduct Brian was declared a ward of the juvenile court, and was sent home with his parents under a program of supervision, guidance and counseling by the probation officer.

But worse was yet to come.

January 1, 1957, Brian, with others, was in a shooting scrape in Pasadena, in the early morning before the Rose Bowl parade. One of his companions had a revolver, and Brian knew he had it. These boys got into an altercation with another group of boys, and they all went down an alley to fight it out. During the fight in the alley the gun was thrown from one boy to another. The boy who last got possession of the gun shot and seriously wounded two of his opponents. When Brian saw the gun pulled he took off.

One victim of the shooting said, "As soon as the first shot was fired the 16 year old took off. He had been standing by the corner. I don't think he should be punished. He didn't do anything and didn't say anything except, 'Let's get out of here.' He was just there."

But after the shooting, Brian with two other boys left Pasadena, went to Long Beach, and got rid of the gun. They were picked up by the police that afternoon.

Brian told the juvenile officers that he made three mistakes: First, in going along when he knew one of the other boys had

---

*Assigned by Chairman of Judicial Council.

a gun; secondly, in going into the alley when he knew a fight was in the making; and, thirdly, in leaving Pasadena and not turning himself in to the authorities there.

After hearing the evidence, the trial judge amended the juvenile petition so that the conduct charged was a misdemeanor instead of a felony. This was so the boy could enlist in the armed services if he wanted to. Minors whose records show participation in felonies are not welcomed in the army or the navy.

Then the judge redeclared the boy a ward of the juvenile court, ordered him committed to Youth Authority, and released him to his parents under a program of probation and supervision by the probation officer.

The minor, through his father, appeals from this order.

It would seem that this boy had little to gain and much to lose by this appeal. He had been treated with leniency, kindness, and consideration, notwithstanding his record and public indignation over gang fighting by young hoodlums. He was at home, and his name was in the juvenile court files not open to public inspection. Now anyone who reads the reports of the courts of review of this state will know what his record is.

The briefs in both these cases argue this as a problem in criminal law. ■ But rules of the criminal law do not necessarily apply to proceedings in the juvenile court.

■ While the juvenile court law may not be used as a means of denying to a minor a constitutional right, or a guarantee given by law to an adult (*In re Contreras*, 109 Cal. App.2d 787, 791 [241 P.2d 631]), it is to be liberally construed (Welf. & Inst. Code, § 551).

■ Proceedings in the juvenile court are not criminal, and an order adjudging a boy or a girl a ward of that court is not a conviction of a crime (Welf. & Inst. Code, § 736); it is more in the nature of a guardianship. (*In re Magnuson*, 110 Cal.App.2d 73 [242 P.2d 362]; *People* v. *Silverstein*, 121 Cal.App.2d 140, 143 [262 P.2d 656].)

■ The primary purpose of the juvenile court is to supplant parental supervision which has been lacking so that a minor may not become a criminal but may grow up a useful member of society. (*People* v. *Renteria*, 60 Cal.App.2d 463, 470 [141 P.2d 37]; *People* v. *Deibert*, 117 Cal.App.2d 410, 415 [256 P.2d 355].)

■ The jurisdiction of the juvenile court extends to any person under 21 years of age who comes within specified descriptions.

This boy was found to come within the provisions of subdivision (m) of section 700 of the Welfare and Institutions Code, one "Who *violates any law* of this State or any ordinance of any town, city, or county, of this State defining crime."

■ The brief on appeal stresses the argument that Brian would have been acquitted in a trial court of taking part in the crime of assault with a deadly weapon or of the crime of aiding and abetting it, a misdemeanor found by the trial judge.

This is the merest speculation. The boy was there. He knew that one of his companions had a gun. He knew that they were going into the alley to fight. After the shooting he ran away and helped dispose of the deadly weapon. Many men are serving long terms in our penitentiaries on evidence not as substantial as that.

It is evident from this record that the authorities of the juvenile court in Los Angeles County have a sympathetic understanding of this boy's problems, are trying to save him from the consequences of his youthful folly, and to give him a chance to make a man of himself. But if this endeavor is to be successful his parents must cooperate.

The facts in this case as stated are amply sufficient to support the order of the juvenile court.

### The Appeal of James Lee Stockwell

This boy is 18 years old; his eighteenth birthday was December 24, 1956.

His father runs a die casting plant. He employs three or four people, including his wife and son James. James is a good worker.

James was first brought into juvenile court with 12 or more traffic citations. He didn't respond promptly to some of them. Some of them were for mechanical conditions of his automobile. He just had the idea that the law didn't apply to him.

After the hearing in the juvenile court on this citation, the matter was continued, and the boy was permitted to continue driving, but only to work and home again. During this continuance his attitude was good. He refrained from driving except to and from work. The case would have been dismissed except for the trouble he next got into.

For, after he became 18 years of age, he took part in the shooting scrape in Pasadena described in the Schubert opinion.

James had the gun that was used, carrying it in his overcoat pocket. He was the one who tossed it into the air to the young man who did the actual shooting. Two boys were seriously wounded, and it is a merciful thing for all concerned that one of them did not die.

James was charged in the superior court with attempted murder. At his request his case was certified to, and accepted by the juvenile court. (Welf. & Inst. Code, § 833.5.)

After hearing the evidence, the judge of the juvenile court amended the petition in this case, as in the Schubert case, to find that a misdemeanor rather than a felony had been committed, declared the boy a ward of the juvenile court, and ordered him committed to Youth Authority. But the court stayed the commitment and released him to the custody of the probation officer for forestry camp placement.

This boy, through his father, also appeals from the order of the juvenile court. The order of camp placement was stayed pending determination of the appeal.

Again it would seem that this boy had little to gain by this appeal. He was 18 years old when the crime was committed. He was the one who had the deadly weapon, and he tossed it to the one who actually did the shooting. And he fled the scene of the crime and helped to get rid of the gun.

In the superior court he was in jeopardy of conviction of a felony, with possibly a long term in the penitentiary, and a criminal record that would follow him all through life. Public opinion in California is so definitely set against gang fighting that that was a real jeopardy.

As a matter of grace, and with the hope of helping him, the juvenile court took his case.

Arguments in his brief of the probative value of the evidence in the juvenile court are subject to the same constitutional rule that applies to all cases on appeal: if there is any substantial evidence to support the finding of the juvenile court, a court of review is without power to weigh or to evaluate it. A reviewing court must indulge in all reasonable inferences to support the findings of the juvenile court, and such findings will not be disturbed on appeal when there is substantial evidence to support them. (*In re Corrigan,* 134 Cal.App.2d 751, 754-755 [286 P.2d 32]; *In re Stein,* 86 Cal. App. 226 [260 P. 566].)

■ The facts in this case are likewise amply sufficient to support the order of the juvenile court.

The orders are, and each of them is, affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied September 3, 1957, and the petition of appellant Stockwell for a hearing by the Supreme Court was denied October 3, 1957.