[Crim. No. 2669. In Bank.—August 13, 1924.]

In the Matter of the Application of PAUL DAEDLER, a Minor, for Writ of Habeas Corpus.

[1] JUVENILE COURT ACT — RIGHT TO JURY TRIAL — CONSTITUTIONAL LAW.—The Juvenile Court Law, in providing for the commitment of a minor to the care and custody of the officers of the juvenile court and to a school of industry, such minor having previously appeared before a committing magistrate on a criminal charge and having been ordered by said magistrate to be turned over to the juvenile court for the latter's consideration, is not violative of constitutional and statutory provisions relating to the right of trial by jury.

[2] ID. — WELFARE OF MINOR — FINDINGS. — A finding in a proceeding under the Juvenile Court Law to the effect that the parents of the minor were incapable of providing for or had failed or neglected to provide proper maintenance, training, and education for such minor is by the express terms of said law rendered unnecessary if the court shall find "that the welfare of such person requires that his custody be taken from said parent or guardian."

---

1. Validity of statutes establishing juvenile courts, notes, 5 Ann. Cas. 96; 7 Ann. Cas. 831; 14 Ann. Cas. 819; Ann. Cas. 1914A, 1227; Ann. Cas. 1915D, 701; 3 L. R. A. (N. S.) 564; 45 L. R. A. (N. S.) 908. See, also, 14 Cal. Jur. 138.

[3] ID.—HABEAS CORPUS — FINDINGS — EVIDENCE.—In this proceeding in *habeas corpus* to secure the release of a minor held under the Juvenile Court Law, if it be claimed that the finding of the judge of the juvenile court to the effect that the welfare of such person requires that his custody be taken from said parent or guardian is unsupported, the answer to such claim is, first, that the evidence taken by such judge is not presented; and, second, that it is expressly found by said judge that there was testimony before him showing that the minor had committed the crime of willful murder, which in itself would not only be sufficient under the terms of subdivision 13 of section 1 of said law to require that said minor be made a ward of said court, but would suffice to furnish some evidence that said minor had passed beyond parental control.

[4] ID.—CHARACTER AND GOOD NAME OF MINOR—RIGHT TO TRIAL BY JURY—ANSWER TO ARGUMENT.—In such proceeding, to the argument of such minor that he is entitled to a trial by jury in order to vindicate his character and good name, it is answered that a minor has in that regard no other or greater right than an adult has; and that an adult has no inherent right to a trial by jury until such time as the penal processes of the law are put in motion toward his punishment for an alleged crime.

[5] ID.—PROCESSES OF LAW NOT PENAL IN CHARACTER—ABSENCE OF RIGHT OF TRIAL BY JURY.—The processes of the Juvenile Court Law are not penal in character, and hence a minor has no inherent right to a trial by jury in the course of the application of their beneficial and merciful provisions to his case.

---

(1) 35 **C. J.**, p. 195, sec. 100.   (2) 31 **C. J.**, p. 1109, sec. 238. (3) 31 **C. J.**, p. 1109, sec. 238.   (4) 35 **C. J.**, p. 195, sec. 100.   (5) 31 **C. J.**, pp. 1102, 1105, secs. 226, 231; 35 **C. J.**, p. 195, sec. 100.

PROCEEDING in Habeas Corpus to secure release of minor from custody of officer of Juvenile Court. Writ denied.

The facts are stated in the opinion of the court.

E. D. Martindale and Daniel Riordan for Petitioner.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, Asa Keyes, District Attorney, and J. W. Joos, Deputy District Attorney, for Respondent.

RICHARDS, J.—The petitioner herein, Paul Daedler, a minor, appearing by his natural guardians, L. O. Daedler

and Pauline Daedler, applies for a writ of *habeas corpus* for the purpose of securing the release of said minor from the custody of one Margaret Bullen, superintendent of the juvenile hall of Los Angeles County, who is alleged to be detaining said minor under and by virtue of an order of the juvenile court of the said county of Los Angeles, and which detention the petitioner alleges to be illegal for the reasons set forth in his petition. The facts upon which the petitioner predicates his reasons for asserting that his said detention is illegal are those embraced in certain judicial proceedings, the record in which is embodied in certain exhibits attached to his said petition, and as to the correctness of which there is no present dispute. It sufficiently appears therefrom that on the seventh day of December, 1923, a criminal complaint was presented by one Salvador Martinez to one Kenneth C. Newell, a justice of the peace of Pasadena township, county of Los Angeles, wherein it was charged that on the fifth day of December, 1923, at Pasadena, in said county, a felony was committed by said Paul Daedler, who at that time and place did willfully and with malice aforethought kill and murder one Arthur Martinez, a human being. That thereupon a warrant was issued by said magistrate for the arrest and detention of said Paul Daedler upon said charge; that by virtue of said complaint and warrant said Paul Daedler was arrested and brought before said magistrate on the seventh day of December, 1923; that it was then made to appear to said magistrate that said Paul Daedler, charged with the commission of said felony, was a minor of the age of a little over fourteen years, upon ascertaining which fact the said magistrate made an order that the proceedings against said minor upon said charge be and they were thereby suspended and that said minor be taken before the juvenile court of said county for its consideration and proceeding under the Juvenile Court Law. The order and direction thus made in the proceeding then pending against said minor was, it is conceded, in substantial conformity with the provisions of section 6 of the Juvenile Court Law, as amended in 1921 (Stats. 1921, p. 799). Thereupon said minor was brought before Edwin F. Hahn, judge of the superior court of the county of Los Angeles, sitting as judge of the juvenile court at a special session of said court upon the charge of being within the provisions

of subdivision 13 of section 1 of the Juvenile Court Law, approved June 5, 1915 (Stats. 1915, p. 1225), and the acts amendatory thereof, which said section of said Juvenile Court Law provides that it shall apply to any person under the age of twenty-one years "who violates any law of this state . . . defining crime." A hearing was had upon said charge after due notice to the above-named parents of said minor, who were present at said hearing, and testimony being taken without objection of any kind at that time being made, it was found by the judge of said juvenile court that said minor was of the age of fourteen years; that a felony had been committed by him in the unlawful killing of Arthur Martinez; that said minor should be a ward of said court within the meaning of section 1, subdivision 13, of the Juvenile Court Law; that the welfare of said minor required that he be taken from the custody of his said parents. An order was accordingly made declaring and adjudging said minor to be a ward of the juvenile court, appointing W. H. Holland, probation officer, to be in charge of said minor, and committing him to the care and custody of such officer until further order. By a further order of said judge the said minor was committed to the Preston School of Industry until he attained the age of twenty-one years, when he was to be returned to the jurisdiction of said juvenile court for further proceedings. After a brief period spent there the said minor was returned to the custody of Margaret Bullen, superintendent of the juvenile hall of Los Angeles County, in whose care and custody he was when this writ was sought and issued.

The petitioner herein, both in his petition and through his counsel, concedes that the proceedings by which said minor was committed to the care and custody of the officers of said juvenile court and to the Preston School of Industry were in all respects regular as being in conformity with the Juvenile Court Law, the only contention of the petitioner and his counsel being that relating to the constitutionality of the sections and subdivisions of said statute under which the foregoing proceedings were taken. [1] The particular contention of the petitioner, his parents, and his counsel in that regard is that said minor, having been arrested upon a charge of murder made in a complaint before a magistrate having jurisdiction to entertain such complaint, and having

been brought before such magistrate upon such charge, he was entitled to the right of trial by jury upon said charge under those certain constitutional and statutory guarantees, to be later noted, upon which he relies, and that the proceedings of the Juvenile Court Law under which, without such trial, he has been committed to the care and custody of the officers and representatives of the juvenile court and to the Preston School of Industry, are unconstitutional in so far as their effect has been to deny and deprive him of such right of trial by jury and of vindication by said means of such charge. The particular sections of the constitution upon which the petitioner and his counsel rely in making this contention are section 7 of article I of the state constitution, which reads, in part, as follows: ''The right of trial by jury shall be secure to all and remain inviolate; . . . Trial by jury may be waived in all criminal cases not amounting to a felony by consent of both parties expressed in open court.'' He also relies upon the provisions of section 13, article I, of the constitution, which reads, in part, as follows: ''In criminal prosecutions in any court whatever the party accused shall have the right to a speedy and public trial. . . . No person shall be twice put in jeopardy for the same offense; nor be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty or property without due process of law.'' The petitioner also cites and relies upon section 811 et seq. of the Penal Code, defining the procedure in cases of any person charged with a felony. In order to a determination of these contentions it will be necessary to review briefly the history and philosophy of juvenile court laws. The theory that the state and its instrumentality, the court, is the guardian of all such minors as require its care and protection is ancient of origin, looking back to the feudal times in England when the crown, through the *inquisitio post mortem*, had the matter of the supervision over the estates of minors in order to realize the fruits of tenure and of livery to the overlord. This was succeeded by the court of wards and liveries in the time of Henry VIII (33 Henry VIII, c. 22) and which continued to exercise such jurisdiction until the year 1660, when the feudal system having run its course, the jurisdiction of this court was transferred to the court of chancery, through which the king, as we are told by Blackstone, in his capacity

of *parens patriae*, assumed the general protection, not only of infant tenants, but of all infants in his kingdom through the keeper of his conscience, his chancellor. (3 Blackstone, 427, 428.) The development of the English law investing the crown as *parens patriae* with the supreme guardianship and supervision over infants and the investiture of courts of equity with jurisdiction over the persons and estates of minors is fully set forth in the leading case of *Eyre* v. *Shaftesbury*, [1722] 2 P. Wms. 103. The doctrine that the state as *parens patriae* of the people who compose it for the purpose of the care, protection, discipline, and reform of those of its citizenship, whether dependents, lunatics, minors, or criminals needing these offices, thus became a part of the British system of government and of jurisprudence, and the jurisdiction of courts of equity over minors thus firmly established in the English law passed to this country upon the establishment of courts of law and equity in its various states, and came regularly into our system of jurisprudence upon the consolidation of these courts. With the modern development of more merciful methods of dealing with the delinquencies of minors various statutes came into being in the several states, which provided for special proceedings in the cases of such delinquents and for particular institutions in the nature of detention homes and schools of industry for the discipline, education, and reform of the delinquents, with a view to their restoration to a higher grade of character and a better quality of citizenship. The efforts of the earlier laws in these directions were variously interpreted by the courts of the several states, depending somewhat upon the form of enactments and upon the diverse views of the courts as to how far they invaded the constitutional rights of those charged with crime. In the state of California, however, the more enlightened view of the purpose of the law in thus attempting to deal.with the cases of juvenile dependents or delinquents was early adopted by this court. In the case of *Ex parte Ah Peen*, 51 Cal. 280, the action of a police magistrate in committing a minor child to an industrial school for his training and reformation was upheld by this court in the face of the express contention that the proceedings resulting in his detention were in conflict with the provisions of section 3 of article I of the constitution of 1849, which provided that the right of trial

by jury should be secured to all; and also with the provisions of section 8 of the same article, providing that no person should be deprived of his liberty without due process of law. The court said:

"It is obvious that these provisions of the constitution have no application whatever to the case of this minor child. The action of the police judge here in question did not amount to a criminal prosecution, nor to proceedings against the minor according to the course of the common law, in which the right of trial by jury is guaranteed. The purpose in view is not punishment for offenses done, but reformation and training of the child to habits of industry, with a view to his future usefulness when he shall have been reclaimed to society, or shall have attained his majority. Having been abandoned by his parents, the State, as *parens patriae,* has succeeded to his control, and stands *in loco parentis* to him. The restraint imposed upon him by public authority is in its nature and purpose the same which, under other conditions, is habitually imposed by parents, guardians of the person, and others exercising supervision and control over the conduct of those who are by reason of infancy, lunacy, or otherwise, incapable of properly controlling themselves. (*Ex parte Crouse,* 4 Whart. 1; *Prescott* v. *State of Ohio,* 19 Ohio, 184.)"

The principles thus early announced have, with one exception, been reaffirmed and followed by the later decisions of this court in dealing with the underlying purpose of our later enacted juvenile court laws. Speaking of the Juvenile Court Act of 1909 (Stats. 1909, p. 213) this court said: "The main purpose of the act is to provide for the care and custody of children who have shown, or who from lack of care are likely to develop criminal tendencies, in order to have them trained in good habits and correct principles. To accomplish this it gives additional jurisdiction and power to the superior courts of the state and provides the officers necessary for the execution of that jurisdiction and power. It is an exercise of the police powers of the state through the judicial department. It is a matter which concerns the whole state as much as any other extension of the judicial system." (*Nicholl* v. *Koster,* 157 Cal. 416 [108 Pac. 302].)

Commenting upon this case, and quoting its foregoing language, this court further said in the case of *Matter of*

*Maginnis,* 162 Cal. 200 [121 Pac. 723] : "The statement might perhaps be broadened to the extent of saying that the act aims, as its principal object, at the proper custody and education of children who lack the care and control deemed essential to their right development, whether or not their situation is such as to be likely to lead them to actual crime. This is the purpose declared in the opening words of the title, viz. : 'An act concerning dependent and delinquent minor children, providing for their care, custody and maintenance.' . . . It needs no argument to show that the existence of dependent and delinquent children is detrimental to the best interests of the community. Ultimately of course the act seeks to prevent such dependency or delinquency. One method of doing this is to take the child out of the custody of the person who has caused or permitted it to become dependent or delinquent."

In the case of *Moore* v. *Williams,* 19 Cal. App. 600 [127 Pac. 509], in which a petition for hearing in this court was denied, that court, citing the foregoing decisions of this court, held that, "These juvenile courts, which are in fact but an extension of the jurisdiction of the superior courts, are the creation of modern philanthropic endeavor, and are designed to, and in fact do, provide a most excellent means of restraining and reforming wayward persons who unchecked may become a menace to society." The single exception to this current of authority above referred to is the case of *In re Becknell,* 119 Cal. 496 [51 Pac. 692], in which this court in a brief opinion and without any citation of authority held that an order of the superior court, based upon the recommendation of a grand jury, after evidence taken before it sufficient to show that a minor of the age of thirteen years had committed the crime of burglary, should be sent to Whittier State School, was void for the reason that said minor had not been accorded a trial by jury. The court in that case had before it the provisions of the particular statute (Stats. 1893, p. 332) under which the above procedure had been followed, and evidently treated the proceeding in question as penal in character, and the order as in effect a judgment imposing imprisonment for a crime. The decision is entirely out of line with the earlier ruling of the court in the Ah Peen case and also the later holdings of the court as to the nature and purpose of reformatory

legislation, and hence cannot be taken or followed as authority upon the interpretation to be placed upon our later juvenile court legislation.

When we turn from these decisions of our own courts dealing with the objects and purpose of juvenile court laws, we find a wealth of learning grouped and still growing around the statutory efforts of nearly every state in the Union to adequately deal with the problem of juvenile dependence and delinquency through the establishment and operation of juvenile courts; and while, as we have stated, there was some disposition in the earlier decisions of the courts of certain states to give strict application of the constitutional safeguards of trial by jury and due process of law to proceedings before the juvenile courts and to hold that the proceedings in the cases of minors brought before such courts were criminal in their nature, the main trend of modern authority has been away from this viewpoint and has been distinctly and almost universally in the direction pointed out by this court in the early case of Ah Peen, *supra,* and emphasized in its later decisions above noted. It would be impractical to comment upon or even to cite all of the cases within this increasing volume of authority, but a few of the more recent apt and striking cases involving almost the precise situation and contentions presented in the instant case may well be referred to. In the case of *Ex parte Januszewski,* 196 Fed. 123, the facts were almost identical with those of the case at bar and the questions presented were the same except that the contention in that case was that the Juvenile Court Law of the state of Ohio was unconstitutional as contravening the provisions of the federal constitution relating to the right of trial by jury and to due process of law. The court, upon quite a full review of the decisions of the various states interpreting juvenile court laws, held that there was no merit in the contention, since the delinquent child was not being charged or tried before the juvenile court with the commission of a crime, but merely with being a delinquent minor whose incorrigibility consisted in the fact that he had shot at another with intent to kill. The court said: "He was not charged with, or tried for, or convicted of, or imprisoned for the crime of shooting with intent to kill. The evidence offered in the juvenile court must have shown that he shot as charged in the affi-

davit, but as he was charged with and tried for a species of delinquency only, such evidence could not by any known rule be used in such hearing to convict him of the crime of shooting with intent to kill. The only office which it could perform was to establish the particular kind of delinquency charged. His commitment was not designed as and it is not a punishment for crime, but to place him under suitable guardianship for proper care and discipline until he is reformed or arrives at the age of majority. Nor is the industrial school a prison (*Prescott* v. *State,* 19 Ohio St. 184 [2 Am. Rep. 388]) ; or the purpose of the juvenile act punishment [citing numerous cases]. The object of the industrial school is the reformation of those committed to its charge. Its inmates receive such education and are instructed in such branches of industry, agricultural or mechanical or otherwise as the board of trustees may determine, the reformation of such inmates and their preparation for usefulness being always kept in view. . . . The purpose of the statute is to save minors under the age of seventeen years from prosecution and conviction on charges of misdemeanor and crimes and to relieve them from the consequent stigma attaching thereto; to guard and protect them against themselves and evil-minded persons surrounding them; to protect and train them physically, mentally and morally. It seeks to benefit not only the child but the community also by surrounding the child with better and more elevating influences and training it in all that counts for good citizenship and usefulness as a member of society. Under it the state which through its appropriate organs is the guardian of the children within its borders (*Van Walters* v. *Board,* 132 Ind. 569 [18 L. R. A. 431, 32 N. E. 568]) assumes the custody of the child, imposes wholesome restraint, and performs parental duties at a time when the child is not entitled either by the laws of nature or of the state to absolute freedom, but is subjected to the restraint and custody of a natural or legally constituted guardian to whom it owes obedience and subjection. It is of the same nature as statutes which authorize compulsory education of children, the binding of them out during minority, the appointment of guardians and trustees to take charge of the property of those who are incapable of managing their own affairs, the confinement of the insane, and the like. The welfare of society requires

and justifies such enactments. The statute is neither criminal nor penal in its nature, but an administrative police regulation.''

This comprehensive view of the scope and purposes of juvenile court laws is fully in harmony with the most enlightened views of the various state courts upon the same subject. An example of this is to be found in the case of *Commonwealth* v. *Fisher*, 213 Pa. St. 48 [5 Ann. Cas. 92, 62 Atl. 198], wherein the same contentions were made as to the unconstitutionality of the Pennsylvania statute, providing courts for the care, treatment, and control of juvenile delinquents under the age of sixteen years. In disposing of the question as to whether the act in question is violative of the provisions of the Pennyslvania constitution providing that ''the right to trial by jury shall remain inviolate,'' the court says: ''There was no trial for any crime here and the act is operative only when there is to be no trial. The very purpose of the act is to prevent a trial, though if the welfare of the public require that the minor should be tried, power to try it is not taken away; but as already stated the act is not for the trial of a child accused of a crime but is mercifully to save him from such an ordeal with the prison or penitentiary in its wake, if the child's own good and the best interests of the state justify such salvation. Whether the child deserves to be saved by the state is no more a question for a jury than whether the father, if able to save it, ought to save it. . . . The act is but an exercise by the state of its supreme power over the welfare of its children.''

And in conclusion the court says: ''Every statute which is designed to give protection, care and training to children as a needed substitute for parental authority and performance of parental duty, is but a recognition of the duty of the state as the legitimate guardian and protection of children where other guardianship fails. No constitutional right is violated but one of the most important duties which organized society owes to its helpless members is performed in just the measure that the law is framed with wisdom and is carefully administered. The conclusions above expressed are in accordance with adjudications elsewhere with but very few exceptions.'' (Citing many cases.)

In the case of *State ex rel. Olsen* v. *Brown*, 50 Minn. 353. [36 Am. St. Rep. 651, 16 L. R. A. 691, 52 N. W. 935], the

supreme court of that state, in commenting upon the case of *People* v. *Turner,* 55 Ill. 281 [8 Am. Rep. 645], which is strongly relied upon by the petitioner herein, shows that it is one of the few exceptional cases upon the subject under review, and that it is contrary to the main current of authority upon the subject and is expressly disapproved in that case. In the case of *Mill* v. *Brown,* 31 Utah, 473 [120 Am. St. Rep. 935, 88 Pac. 609], certain other of the cases cited and relied upon by the petitioner herein are commented upon and shown to be contrary to the main current of modern authority. Without further citation of cases it may be stated that the almost universal trend of modern cases is in the direction of upholding the constitutionality of juvenile court laws as against assaults upon their validity based upon the grounds urged by the petitioner and his counsel in the instant case.

[2] But one remaining contention of the petitioner herein requires attention. It is that the judge of the juvenile court made no finding to the effect that the parents of the minor were incapable of providing for or had failed or neglected to provide proper maintenance, training, and education for such minor, and that such finding is required by the provisions of section 9b of the Juvenile Court Law; and that in the absence of such finding no ward of the juvenile court shall be taken from the custody of his parent or legal guardian. An examination of that section of the act, however, shows that such finding is by its express terms rendered unnecessary if the court shall find "that the welfare of such person requires that his custody be taken from said parent or guardian." [3] The judge of the juvenile court in this case did expressly make this latter finding, and if it be claimed that there was no evidence before the said magistrate to support such finding the answer is twofold: first, that we have not the evidence taken by such magistrate before us; second, that it is expressly found by said magistrate that there was testimony before him showing that the minor had committed the crime of willful murder, which in itself would not only be sufficient under the terms of subdivision 13 of section 1 of said act to require that said minor be made a ward of said court, but would suffice to furnish some evidence that said minor had passed beyond

parental control. [4] To the argument of counsel for the petitioner that the said minor is entitled to a trial by jury in order to vindicate his character and good name, it may be answered that a minor has in that regard no other or greater right than an adult has; and that an adult has no inherent right to a trial by jury until such time as the penal processes of the law are put in motion toward his punishment for an alleged crime. [5] The processes of the Juvenile Court Law are, as we have seen, not penal in character, and hence said minor has no inherent right to a trial by jury in the course of the application of their beneficial and merciful provisions to his case.

The application is denied.

Myers, C. J., Seawell, J., Lawlor, J., Lennon, J., Shenk, J., and Waste, J., concurred.