[Civ. No. 607. Fifth Dist. July 11, 1966.]

In re BALTAZAR CASTRO, JR., a Person Coming Under the Juvenile Court Law.

THE PEOPLE, Plaintiff and Respondent, v. BALTAZAR CASTRO, JR., Defendant and Appellant.

Siemon & Patterson and Robert D. Patterson, Jr., for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Plaintiff and Respondent.

CONLEY, P. J.—A startling concatenation of arson fires in and near a workingmen's residential quarter in Bakersfield during the fall of 1965 alerted the local peace officers and the fire department to the necessity of finding the pyromaniac. After concentrated efforts, the supposed instigator was identified as a minor of the age of 16 years, who resided in the quarter. A petition was filed by Bill G. Williamson of the Kern County Probation Department alleging that Baltazar Castro, aged 16 years, came within the provisions of section 602 of the Welfare and Institutions Code in that he violated the laws of the State of California in the following particulars: count I alleged that on or about August 20, 1965, he wilfully and maliciously set fire to the Zellerbach Paper Company warehouse, located at 1012 Union Avenue, Bakersfield, California, thereby violating section 448a of the Penal Code of California; count II averred that on or about September 28, 1965, he was guilty of arson with respect to a dwelling

house at 419 East 9th Street, Bakersfield, thereby violating section 447a of the Penal Code of California; and count III stated that on or about October 22, 1965, he committed arson at the dwelling house at 423 East 9th Street in Bakersfield, in violation of section 447a of the Penal Code. Count II was dismissed during the course of the proceeding.

A regularly conducted proceeding was held in the juvenile court at which the minor was represented throughout by able counsel. Evidence for and against the minor was heard by the court. In addition, the judge received a report from the probation officer (*In re Garcia,* 201 Cal.App.2d 662, 665 [20 Cal. Rptr. 313]), and a written medical opinion from Antonio Perelli-Minetti, Jr., M.D., a psychiatrist appointed for the purpose.

At the end of the hearing, the court determined Baltazar Castro, Jr., to be a ward of the court, and held that it was in his best interest and in accordance with his welfare that he be removed from the custody of his parents, that he be committed to Camarillo State Hospital, pursuant to section 703 of the Welfare and Institutions Code, for observation and treatment for a period of 90 days or until the further order of the court, and that the County of Kern pay the sum of $40 a month for the maintenance of said ward for so long as he remained there.

The minor, through his attorneys, appeals and raises the following questions:

1) Does the rule regarding admissibility of confessions established in the case of *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], apply to minors in juvenile court proceedings?

2) Was the corpus delicti of either count I or count III sufficiently established to admit into evidence a confession if such confession was properly obtained?

3) Was the admissible evidence sufficient to warrant a finding of wardship under Welfare and Institutions Code, section 602?

In essence, the appeal turns on the question whether or not it is necessary to give a minor the warnings as to constitutional rights enunciated in the cases of *People* v. *Dorado, supra,* 62 Cal.2d 338, *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and *Miranda* v. *Arizona,* 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] No. 759 Supreme Court of the United States, June 13, 1966, before such minor's confession to a peace officer can be properly admitted in evidence. Among the confessions of the potential ward, which

were testified to, was a series made to law enforcement officers prior to the hearing. It is admitted that Baltazar Castro, Jr., had not been given all of the warnings as to constitutional rights required in the above entitled cases. The peace officers had told him on more than one occasion that he did not have to make a statement, and the record shows that he, at first, heeded this warning; but it was also confirmed by the officials that he was never told that he could have an attorney of his own choosing and that, if he did not have adequate means to hire counsel, the court would appoint one for him. It is clear, therefore, that if this had been a criminal trial there was an absence of the proof required of the state prior to the introduction of the confessions made to the police officers. (*People* v. *Stockman*, 63 Cal.2d 494, 500-501 [47 Cal.Rptr. 365, 407 P.2d 277].)

But the Juvenile Court Act and the courts of California have more than once emphatically stated that proceedings in the juvenile court do not constitute a criminal trial. Section 503 of the Welfare and Institutions Code provides: ''An order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding.''

Section 502 of the Welfare and Institutions Code states the nature of the proceedings in the juvenile court as follows: ''The purpose of this chapter is to secure for each minor under the jurisdiction of the juvenile court such care and guidance, preferably in his own home, as will serve the spiritual, emotional, mental, and physical welfare of the minor and the best interests of the State; to preserve and strengthen the minor's family ties whenever possible, removing him from the custody of his parents only when his welfare or safety and protection of the public cannot be adequately safeguarded without removal; and, when the minor is removed from his own family, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents. This chapter shall be liberally construed to carry out these purposes.''

The Supreme Court of this state in *People* v. *Dotson*, 46 Cal.2d 891, 895 [299 P.2d 875], has said: ''. . . proceedings before the juvenile court, even in cases where a criminal charge is pending in the superior court, are not criminal in nature. They are in the nature of guardianship proceedings in which the state as *parens patriae* seeks to relieve the minor of

the stigma of a criminal conviction and to give him corrective care, supervision and training. [Citing authorities.]''

(*In re Daedler,* 194 Cal. 320 [228 P. 467]; *In re Dargo,* 81 Cal.App.2d 205 [183 P.2d 282]; *In re Johnson,* 227 Cal. App.2d 37 [38 Cal.Rptr. 405]; *In re Schubert,* 153 Cal.App.2d 138 [313 P.2d 968]; *In re Magnuson,* 110 Cal.App.2d 73 [242 P.2d 362].)

While the first juvenile court law in California was not enacted until 1903, an earlier case relating to minors, *Ex parte Ah Peen,* 51 Cal. 280, laid down the rule that in dealing with the very young in proceedings of this kind the court was not trying a criminal case.

Notwithstanding the consistent repetition of the holding that a proceeding in the juvenile court is not a criminal trial, there have been indications of uneasiness by the courts for many years that seem at variance with this theory, stressing the constitutional rights of potential wards, which ordinarily are called upon in criminal prosecutions. (See *In re Macidon,* 240 Cal.App.2d 600, 610 [49 Cal.Rptr. 861]; *In re Mikkelsen,* 226 Cal.App.2d 467 [38 Cal.Rptr. 106]; *In re Contreras,* 109 Cal.App.2d 787 [241 P.2d 631]; *In re Alexander,* 152 Cal.App.2d 458, 461 [313 P.2d 182].)

In recent times, also, there are increasing indications that this theory of treating juvenile offenders has not always worked out with beneficial results and that there is discontent with the theory and practice of juvenile courts in parts of this country. (See *Kent* v. *United States,* 383 U.S. 541 [86 S.Ct. 1045, 16 L.Ed.2d 84]; Barrett, Brown and Cramer, *Juvenile Delinquents: The Police, State Courts and Individualized Justice,* 79 Har.L.Rev. (1966) pp. 775-810.)

As an intermediate appellate court we are bound by the law enunciated by the Supreme Court. ▉ For, as is said in *Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]: ''Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court.''

▉ We, therefore, necessarily accept the holding that juvenile court proceedings are not criminal trials and that, as civil proceedings, they are amenable to the law specifically relating to them. (See also *In re Jones,* 34 Cal.App.2d 77 [93 P.2d 185]; 15 Cal.Jur.2d, Delinquent Children, § 5, p. 634.)

The importance of juvenile court cases is stressed by the fact that during the year 1964-65 juvenile courts throughout California handled 52,089 filings out of a total of 416,292

superior court filings, that is to say one-eighth of all cases filed.[1] Last year, some 49,837 juvenile court cases were disposed of, that being an increase of 4,508 cases over the experience of the previous year.

One of the important rights set up in the amendments to the federal Constitution is the right to a jury trial (U.S. Const., Amend. VI) ; but the law relating to juvenile courts in this state has never provided for a jury trial and none is allowed. (*In re Daedler, supra,* 194 Cal. 320, 332.) Another right given to persons accused of crime is the right to bail (U.S. Const., Amend. VIII), but bail, as such, is not now provided for in the juvenile court enactment in this state. (*In re Magnuson, supra,* 110 Cal.App.2d 73, 74.) ▇ In criminal cases, proof of guilt must be made beyond all reasonable doubt (Pen. Code, § 1096) ; but in juvenile court the quantum of proof of the facts required to authorize a finding of wardship need only be a preponderance of the evidence. (Welf. & Inst. Code, § 701.)

We believe that both theory and practice show that this state cannot logically or practically carry on an effective system which adheres in part to the underlying theory of juvenile courts but, at the same time, requires the strict procedural exercise in detail of all of the constitutional rights accorded to an adult accused of crime. It may be noted in this connection, that if a minor should ask that he be transferred to the adult criminal side of the court (Welf. & Inst. Code, § 606), a juvenile court judge would no doubt honor such a request and transfer the case to the adult criminal court, where the accused juvenile could exercise in detail all of the rights guaranteed by the federal Constitution to one accused of crime, among them being a right to bail, a right to a trial by jury, a right to have his guilt proven to a moral certainty and beyond a reasonable doubt, and a right to exclude all confessions made by him to peace officers in the absence of the preliminary warnings prescribed by the *Escobedo, Dorado* and *Miranda* cases. So far as we are informed, no such request has ever been made by a minor said to have violated a criminal statute ; the reason is obvious—the treatment accorded a young person under juvenile court theory and practice is easier on him and more to be welcomed than procedure under the criminal law.

Our legal system oriented toward civil rights, holds generally that, because of their youth, minors are not fully accountable in contract or in tort; and it seems, therefore, not

---

[1] The State Bar of California, Reports, June, 1966 page 1.

a little ridiculous to hold that under the *Dorado* rule the state would have to prove initially that the minor involved must have understood constitutional warnings of the peace officers relative to confessions before such confessions would be admissible in evidence. An 8-, 9-, or 10-year-old boy, or even a minor of an age up to majority, is considered by our civil law as incapable of clearly making a binding contract in the same way as an adult; in tort law there are many situations in which a juvenile is not held to the same standard of care as one who has gained his majority; the necessity of guardianship, in connection with the property rights of minors, illustrates that juveniles are not invariably held to adult standards of understanding and judgment. An unaided minor cannot convey his real property, even though he knowingly wishes to do so. How then can he be expected knowingly and effectively to waive his constitutional rights? If the procedure based on the *Escobedo, Dorado* and *Miranda* cases should be held to apply in all strictness to juveniles and juvenile proceedings in order to exclude confessions made to peace officers, the doctrine of *parens patriae* would become a hollow phrase and the juvenile court simply a young people's criminal court in every situation such as the present.

We conclude, therefore, after a careful consideration of the circumstances of this case and a painstaking examination of the Juvenile Court Act, in the light of the many cases which have been determined under that act and its predecessor provisions, that the procedure expounded in the *Escobedo, Dorado* and *Miranda* cases does not apply to juvenile court litigation so as to require the reversal of any proceeding in which the evidence of a confession to a peace officer has been admitted without proof of the preliminary warnings required in criminal cases.

We must turn, therefore, to section 701 of the Welfare and Institutions Code, which prescribes in detail the method of conducting a hearing of this kind under the California juvenile court theory: ''At the hearing, the court shall first consider only the question whether the minor is a person described by Sections 600, 601, or 602, and for this purpose, any matter or information relevant and material to the circumstances or acts which are alleged to bring him within the jurisdiction of the juvenile court is admissible and may be received in evidence; however, a preponderance of evidence, legally admissible in the trial of criminal cases, must be adduced to support a finding that the minor is a person

described by Section 602, and a preponderance of evidence, legally admissible in the trial of civil cases must be adduced to support a finding that the minor is a person described by Sections 600 or 601. When it appears that the minor has made an extrajudicial admission or confession and denies the same at the hearing, the court may continue the hearing for not to exceed seven days to enable the probation officer to subpoena witnesses to attend the hearing to prove the allegations of the petition. If the minor is not represented by counsel at the hearing, it shall be deemed that objections that could have been made to the evidence were made.''

That this particular wording of section 701 of the Welfare and Institutions Code as it now exists was not inadvertent but was thoroughly considered and designed to do exactly what on its face it purports to do is shown by a reference to the report of the 1959-1960 Governor's Special Study Commission on Juvenile Justice, part 1, pages 29 and 30, which recommended detailed changes resulting in the Juvenile Court Act of 1961, where it is said: ''The problem in attempting to establish acceptable juvenile court procedures is to attain a working balance between two essential objectives—first, preserving the guarantee of due process to the minor; and second, establishing an informal court atmosphere so that potentially harmful effects of the proceedings are minimized and the minor's receptivity to treatment is encouraged.

''The Commission believes that these objectives can be attained by applying rules of evidence routinely observed in the trial of any other cause in a court of law *with one important modification,* that such rules are to be applied only to test sufficiency of evidence and not to be applied as rules of admissibility. Thus, any matter relevant and material to the past or present conduct, welfare, or care of the minor, and any matter material and relevant to the acts or circumstances which are alleged to bring him within the court's jurisdiction, should be received in evidence. However, competent evidence, not subject to timely objection by competent counsel, must be adduced to support a finding of wardship.

''All of the reasons for employing rules of evidence in other judicial proceedings, e.g., to insure truthful, reliable, and fair testimony, apply with equal force to a hearing on a minor's delinquency or a hearing in which a child may be removed from his family because of parental neglect.

''The Commission also suggests that accomplice testimony should be surrounded with the usual safeguards and that no finding should be made upon the uncorroborated *extra-judicial*

admission or confession of the minor unless he is actually represented by counsel at the hearing.''

Thus, by the well-considered and specific provisions of the code section regulating the receipt of evidence at the hearing, the trial court is directed to permit all evidence which bears on the question whether the minor is a person described in section 602 of the Welfare and Institutions Code, but at the same time the court is specifically prevented from making a finding of wardship in a case of this kind unless there is a preponderance of evidence to that effect, which would have been legally admissible on the trial of a criminal case of this kind. All evidence bearing on the questions at issue is admissible by the express provisions of the section, but the utilization of the evidence by the court is strictly controlled. In determining whether Castro should be named as a ward of the court, it was essential that the judge completely disregard all of the evidence relative to confessions to the police officers, because such confessions would not have been legally admissible on the trial of the case if a criminal charge against Castro had been brought in the adult court. There remains, therefore, the question whether entirely apart from this excluded evidence there was a preponderance of evidence legally admissible on the trial of an adult criminal in a case of this kind, which showed the commission of crime by Castro.

 But first of all, we must inquire whether or not there was proof of the corpus delicti. (*People* v. *Bispham*, 26 Cal. App.2d 216 [79 P.2d 166].) The answer is affirmative with respect to the Zellerbach fire (count I) in that there was evidence that there was a pile of wood and paper at the site of the fire and one of the firemen noticed a strong smell of gasoline (*In re Corey*, 230 Cal.App.2d 813, 824 [41 Cal.Rptr. 379]), and that an expert witness testified that the blaze could not have started by spontaneous combustion. With respect to count III, however, the answer must be negative, as there was no independent preliminary showing that the fire in the dwelling house was the result of arson.

Having established that the Zellerbach fire was set, we next note that there was evidence of confessions by Castro, entirely apart from the excluded confessions made to the peace officers. He did inform a friend who testified that young Castro said he had started numerous fires, and he also made a confession of his responsibility to his father in Spanish and in the presence of Officer Munoz, who understood what was said. As these facts were proven, the court was within its rights in finding that the minor is a ward of the court because of the commis-

sion by him of what would have been arson, if committed by an adult tried in a criminal court.

Appellant also contends that he should have been granted bail. While there is no specific section in the present form of the Juvenile Court Act for bail as such, there is ample provision in the act for what would be even more advantageous to a potential ward in a proper case. Sections 626, 628, 631, 632, and 635 of the Welfare and Institutions Code give power to the judge presiding to turn over to his parents the custody of the child without the requirement of posting bail. These sections seem clearly to establish reasonable means for the release of a juvenile pending a hearing. Of course, the Juvenile Court Act further contemplates that in a case in which it would not be proper or wise in the opinion of the court to deliver custody of the minor to the parents, the child may be kept in custody. (See *In re Magnuson, supra,* 110 Cal.App.2d 73.) Incidentally, it is to be noted that the suggestion of the appellant that this failure of the law to provide for bail in cases of juvenile delinquency should be considered on this appeal is not well taken; for, if at this stage, we should conclude, which we do not, that the court should have released custody of the minor to his parents during the pendency of the action, such a finding would not properly be a ground for reversing the judgment. A question of this kind should be raised, if at all, by a writ of habeas corpus or other appropriate writ before judgment at the time of the court's refusal to release the minor.

The judgment is affirmed as to the first count and reversed as to count three.

Stone, J., and McMurray, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 7, 1966. Peters, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairman of the Judicial Council.