[Civ. No. 11333.   Third Dist.   Oct. 5, 1966]

In re ROBERT ACUNA, a Person Coming Under the Juvenile Court Law.

WARREN THORNTON, as Chief Probation Officer, etc., Plaintiff and Respondent, v. ROBERT ACUNA, Defendant and Appellant.

John R. Griffin for Objector and Appellant.

Thomas C. Lynch, Attorney General, Doris Maier, Assistant Attorney General, and Michael Buzzell, Deputy Attorney General, for Petitioner and Respondent.

REGAN, J.—By a petition filed in the juvenile court under section 602 of the Welfare and Institutions Code on August 2, 1965, appellant Robert Acuna, a minor of the age of 17 years, was charged with a violation of section 245 of the Penal Code (assault with a deadly weapon), and by a supplemental petition dated August 17, 1965, he was charged under said section 602 with violations of sections 647, subdivision (f), 415 and 148 of the Penal Code. After a hearing, at which he was represented by counsel, Acuna was declared a ward of the juvenile court. He appeals, contending:

1. His extrajudicial confession was improperly received in evidence.

2. The evidence was insufficient to sustain the finding of wardship on either the original or the supplemental petitions.

3. The trial court was biased against appellant.

### STATEMENT OF FACTS

A. *The Original Petition.*

1. *Facts Relating to the Assault.*

One George Culjius, driving at about 2 a.m. on July 31, 1965, was attacked by several juveniles when he halted his car

at a stoplight. The car was damaged and he received serious injuries.

Just previous to this incident, Mr. Culjius had noticed a group of juveniles in a 1957 Lincoln convertible on 21st Street around Second Avenue, two of whom were sitting on the trunk lid and one of whom had a metal object in his hand.

During the course of the assault Officer Arino came on the scene and noticed this 1957 Lincoln convertible, empty, with its engine running and lights on directly behind a car which was parked at the crosswalk on 21st and Broadway with its hood up. He saw a group of juveniles running toward the convertible; one of the boys jumped into the car in the driver's seat. The officer told him to pull over to the curb as he wished to talk to him. The driver replied they were "just protecting themselves." The driver started to move his car toward the officer, who warned him to pull over or he would shoot. While the driver started to back up, other juveniles returned to the car, jumped in the door and windows. Then the car immediately took off, the juveniles crouching down to avoid being seen. The officer recognized Antonio Barraza as the driver of the car. At that particular time, the officer did not know that anyone had been assaulted. As he walked across the street, he observed Mr. Culjius lying on the sidewalk bleeding from his head.

### 2. *The Extrajudicial Statement.* (Original Petition)

Officers Olwell and Lysaght of the Sacramento Police Juvenile Division, after contacting Tony Barraza, questioned appellant about the assault upon George Culjius. Appellant told Officer Olwell that he had gone to the Coconut Grove Ballroom where he had an altercation with a colored youth. From the Coconut Grove appellant related that he proceeded to Governor's Hall and met Tony Barraza. Appellant had joined the group in Barraza's car and Barraza drove to 21st and Broadway, the scene of the attack on Mr. Culjius. Looking toward the rear of the auto in which they were riding, appellant saw a fight. He stated that he and two or three others from the Lincoln got out of the car. Appellant had taken a tire iron with him. Appellant admitted that he struck the victim on the head with a tire iron.

### 3. *Appellant's Personality Disorder.*

Dr. Howard Herrick, a psychiatrist at DeWitt State Hospital, had become acquainted with appellant when appellant previously was confined at DeWitt by a Yolo County court

commitment. Appellant had been placed in DeWitt because of hitting another person with a baseball bat. It was Dr. Herrick's opinion that appellant, while at DeWitt, was suffering from a deep-seated and long-standing personality disorder which had been diagnosed as an "emotionally unstable personality." According to Dr. Herrick, appellant needs treatment where his aggressive tendencies could be controlled and where he could receive intensive psychotherapy. Appellant's father also wished appellant to be aided.

## B. *Supplemental Petition.*

On the evening of July 31, 1965, Officer Forsyth and other policemen were called to Governor's Hall at the Sacramento State Fairgrounds to help break up a juvenile disturbance. Appellant was present at this disturbance in a parking lot. Appellant was told to leave and responded by swinging at Forsyth and by screaming "you f . . . . . g police officers, you bastards." Appellant continued to scream and kick, ultimately having to be subdued with handcuffs. The appellant had been drinking and appeared to be intoxicated; his breath carried a strong smell of alcohol. During this incident numerous children were present in the parking lot.

The court in *In re Castro,* 243 Cal.App.2d 402, 405 [52 Cal.Rptr. 469], had before it the questions raised by petitioner, namely: "1) Does the rule regarding admissibility of confessions established in the case of *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], apply to minors in juvenile court proceedings. . . . 3) Was the admissible evidence sufficient to warrant a finding of wardship under Welfare and Institutions Code, section 602?''

In the case before us, appellant, before confessing to the police, was not given the warnings as to his constitutional rights enunciated in and required by *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], in that he was not advised of his right to remain silent, that he was entitled to have an attorney of his own choosing, and that if he did not have adequate means to hire counsel, the court would appoint counsel for him.

The confession of appellant, being the result of an interrogation that lent itself to eliciting incriminating statements from him, would clearly come within the proscription of *Dorado, Escobedo* and *Miranda* if the juvenile court proceed-

ing was a criminal trial. (*People* v. *Stockman*, 63 Cal.2d 494, 500-501 [47 Cal.Rptr. 365, 407 P.2d 277].)

However, the juvenile court proceeding at which appellant was adjudged to be a ward of the court is not a criminal trial or criminal proceeding. In 1956 in the case of *People* v. *Dotson*, 46 Cal.2d 891, 895 [299 P.2d 875], the court stated: "But proceedings before the juvenile court, even in cases where a criminal charge is pending in the superior court, are not criminal in nature. They are in the nature of guardianship proceedings in which the state as *parens patriae* seeks to relieve the minor of the stigma of a criminal conviction and to give him corrective care, supervision and training. [Citations.]" In 1961 the Legislature added section 503 to the Juvenile Court Law. It reads: "An order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding."

The court in *Dotson, supra,* accepts the holding, as did the court in *In re Castro, supra,* 243 Cal.App.2d 402, 407 [52 Cal.Rptr. 469], ". . . that juvenile court proceedings are not criminal trials and that, as civil proceedings, they are amenable to the law specifically relating to them. (See also *In re Jones,* 34 Cal.App.2d 77 [93 P.2d 185] ; 15 Cal.Jur.2d, Delinquent Children, § 5, p. 634.)"

"In criminal cases, proof of guilt must be made beyond all reasonable doubt (Pen. Code, § 1096) ; but in juvenile court the quantum of proof of the facts required to authorize a finding of wardship need only be a preponderance of the evidence. (Welf. & Inst. Code, § 701.)" (*In re Castro, supra,* at p. 408.)

In the *Castro* case, at page 409, the court, noting that our legal system does not hold minors fully accountable in contract or tort and that to expect a child of tender years to understand the constitutional warnings expressed in *Dorado, Escobedo* and *Miranda* may be a little ridiculous, concludes: ". . . that the procedure expounded in the *Escobedo, Dorado* and *Miranda* cases does not apply to juvenile court litigation so as to require the reversal of any proceeding in which the evidence of a confession to a peace officer has been admitted without proof of the preliminary warnings required in criminal cases."

The statement just quoted from *Castro* was not dispositive of the case. It considered, as we do, the effect of section 701, Welfare and Institutions Code. We note its requirement that

before a person may be adjudged a ward of the juvenile court, the court, while it may receive in evidence any matter or information relevant and material to the circumstances or acts which are alleged in the petition to bring him within the jurisdiction of the juvenile court, is bound by qualifying language therein. This section states, in part, ". . . however, . . . a preponderance of evidence, legally admissible in the trial of civil cases must be adduced to support a finding that the minor is a person described by Sections 600 or 601. When it appears that the minor has made an extrajudicial admission or confession and denies the same at the hearing, the court may continue the hearing for not to exceed seven days to enable the probation officer to subpoena witnesses to attend the hearing to prove the allegations of the petition. If the minor is not represented by counsel at the hearing, it shall be deemed that objections that could have been made to the evidence were made."

■ Section 702 of the Welfare and Institutions Code, dealing with the preponderance of evidence as a quantum of proof, is addressed to the judge of the juvenile court as the trier of fact rather than the appellate court. ■ The question before us as an appellate court is whether there is substantial evidence to support the juvenile court judge's determination that a preponderance of the evidence existed exclusive of the confession of appellant.

■ We find the evidence is sufficient to affirm the juvenile court's judgment of wardship. Witness Barraza told the police officer that appellant Acuna was present at the scene of the assault charged in the original petition and that Acuna had left the car carrying a tire iron. As to the supplemental petition, police officer Burns testified to the riotous behavior of Acuna as charged therein.

In *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689], the court enunciated: "The rule as to our province is: 'In reviewing the evidence . . . all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary . . . principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any *substantial* evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' (Italics added.) [Citation.] The

rule quoted is as applicable in reviewing the findings of a judge as it is when considering a jury's verdict. . . . Appellate courts, therefore, if there be any reasonable doubt as to the sufficiency of the evidence to sustain a finding, should resolve that doubt in favor of the finding; . . .'' (See also *Moran* v. *Board of Medical Examiners*, 32 Cal.2d 301, 308-309 [196 P.2d 20].)

An examination of the record does not sustain appellant's final contention that the trial court was biased against him.

There being substantial evidence, minus the appellant's confession, to support the judgment of wardship, the judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.